# PETER WALLIN v. GREAT NORTHERN RAILWAY COMPANY.

### (151 N. W. 291.)

**Personal injury — ignition of lighting gas — employee — volunteer — not engaged in employment — dismissal of case — motion for.**

Plaintiff was injured by ignition of lighting gas while the tank containing it was being cleaned and recharged. Plaintiff recovered on the theory that the gas was ignited ·by the lantern of an incompetent and inexperienced employee, a boy seventeen years old, who, plaintiff asserts, was negligently directed to assist in such work. All the evidence is examined, and it is held that there is no evidence to support the finding that said employee, who had other duties elsewhere to perform, was assigned to this work or directed to do it. Instead the evidence without contradiction is all to the effect that the boy whose lantern plaintiff asserts caused the explosion, was a mere volunteer, and was at the place of the accident out of his mere curiosity, and for which the defendant and its officials in charge were in no wise responsible. The motion to dismiss made at the close of plaintiff's case and again at the close of the trial should have been granted, and dismissal is directed.

Opinion filed February 9, 1915.

Appeal from the District Court of Richland County, *Allen,* J.

Reversed and ordered dismissed.

*Purcell & Divet* and *Murphy & Toner,* for appellant.

No common-law liability exists in this case, and if defendant is liable at all, it is because of some law extending its liability in relation to fellow servants, beyond the common law. Beleal v. Northern P. R. Co. 15 N. D. 318, 108 N. W. 33, 11 Ann. Cas. 921, 20 Am. Neg. Rep. 453; Hoxie v. New York N. H. & H. R. Co. 82 Conn. 352, 73

Atl. 754, 17 Ann. Cas. 324, 21 Am. Neg. Rep. 42; Sullivan v. Mississippi & M. R. Co. 11 Iowa, 421.

The plaintiff complains on but one ground of negligence, and he is confined to that negligence alleged. Jenning v. Great Northern R. Co. 96 Minn. 302, 1 L.R.A.(N.S.) 696, 104 N. W. 1079; Chicago, M. & St. P. R. Co. v. Westby, 47 L.R.A.(N.S.) 97, 102 C. C. A. 65, 178 Fed. 619.

The accident involved in this case happened in Minnesota, and the laws of that state govern. Herrick v. Minneapolis & St. L. R. Co. 31 Minn. 11, 47 Am. Rep. 771, 16 N. W. 413; Chicago & E. I. R. Co. v. Rouse, 178 Ill. 132, 44 L.R.A. 410, 52 N. E. 951, 5 Am. Neg. Rep. 549; Voshefskey v. Hillside Coal & I. Co. 21 App. Div. 168, 47 N. Y. Supp. 386; Louisville & N. R. Co. v. Graham, 98 Ky. 688, 34 S. W. 229; Western & A. R. Co. v. Strong, 52 Ga. 461; East Tennessee, V. & G. R. Co. v. Lewis, 89 Tenn. 235, 14 S. W. 603; Texas & P. R. Co. v. Cox, 145 U. S. 593, 36 L. ed. 829, 12 Sup. Ct. Rep. 905.

Their law on the subject of fellow servants has been construed by their courts the same as our law of 1903. Blomquist v. Great Northern R. Co. 65 Minn. 69, 67 N. W. 804; Leier v. Minnesota Belt-Line R. & Transfer Co. 63 Minn. 203, 65 N. W. 269; Lavallee v. St. Paul, M. & M. R. Co. 40 Minn. 249, 41 N. W. 974; Weisel v. Eastern R. Co. 79 Minn. 245, 82 N. W. 576, 7 Am. Neg. Rep. 635; Schus v. Powers-Simpson Co. 85 Minn. 447, 69 L.R.A. 887, 89 N. W. 68.

Where the work of the employee has nothing to do with the *movement* and *operation* of cars or trains, and the particular injury complained of was not caused by the movement or operation of cars or trains, then the work is *not* railroad hazard. Jenning v. Great Northern R. Co. 96 Minn. 302, 1 L.R.A.(N.S.) 696, 104 N. W. 1079; Beleal v. Northern P. R. Co. 15 N. D. 318, 108 N. W. 33, 11 Ann. Cas. 921, 20 Am. Neg. Rep. 453; Smith v. Burlington, C. R. & N. R. Co. 59 Iowa, 73, 12 N. W. 763; Luce v. Chicago, St. P. M. & O. R. Co. 67 Iowa, 75, 24 N. W. 600; Pearson v. Chicago, M. & St. P. R. Co. 47 Minn. 9, 49 N. W. 302; Foley v. Chicago, R. I. & P. R. Co. 64 Iowa, 644, 21 N. W. 124, 14 Am. Neg. Cas. 630; Reddington v. Chicago, M. & St. P. R. Co. 108 Iowa, 96, 78 N. W. 800, 6 Am. Neg. Rep. 60.

Plaintiff admitted that he *knew* this gas was explosive and that to

bring a lighted lantern near it was dangerous. A person exposing himself to a *known* danger assumes *all ordinary risks,* and is guilty of contributory negligence. Anniston Pipe Works v. Dickey, 93 Ala. 418, 9 So. 720; Noyes v. Southern P. R. Co. 3 Cal. Unrep. 293, 24 Pac. 927; Pittsburgh, Ft. W. & C. R. Co. v. Collins, 87 Pa. 405, 30 Am. Rep. 371; Goldstein v. Chicago, M. & St. P. R. Co. 46 Wis. 404, 1 N. W. 37; Baltimore & O. R. Co. v. Depew, 40 Ohio St. 127; Corlett v. Leavenworth, 27 Kan. 673; Mehan v. Syracuse, B. & N. Y. R. Co. 73 N. Y. 585; Erie v. Magill, 101 Pa. 616, 47 Am. Rep. 739; Thunborg v. Pueblo, 45 Colo. 337, 101 Pac. 399, 21 Am. Neg. Rep. 36; Smith v. Peninsular Car Works, 60 Mich. 501, 1 Am. St. Rep. 542, 27 N. W. 662, 16 Am. Neg. Cas. 42; Mitchell v. Stewart, 187 Pa. 217, 40 Atl. 799, 4 Am. Neg. Rep. 578; Truntle v. North Star Woolen-Mill Co. 57 Minn. 521, 58 N. W. 832; 1 Labatt, Mast. & S. p. 816; Sweeney v. Minneapolis & St. L. R. Co. 33 Minn. 153, 22 N. W. 289, 16 Am. Neg. Cas. 302; Mantel v. Chicago, M. & St. P. R. Co. 33 Minn. 62, 21 N. W. 853.

A servant is also under a duty to pay attention to his surroundings. If he does not, he is negligent. Sours v. Great Northern R. Co. 84 Minn. 230, 87 N. W. 766.

One of the *ordinary* risks in handling any lighting gas, in the very nature of things, is that it may explode. Plaintiff knew this gas was explosive; that it was dangerous to bring a light near it; he had done the work a number of times before. Therefore he assumed the risks and cannot recover. Toohey v. Equitable Gas Co. 179 Pa. 437, 36 Atl. 314, 1 Am. Neg. Rep. 185; Brown v. West Riverside Coal Co. 143 Iowa, 662, 28 L.R.A.(N.S.) 1260, 120 N. W. 732, 21 Am. Neg. Rep. 646; Perkins v. Oxford Paper Co. 104 Me. 109, 71 Atl. 476, 21 Am. Neg. Rep. 116; Young v. Randall, 104 Me. 135, 71 Atl. 647, 21 Am. Neg. Rep. 127; Anniston Pipe Works v. Dickey, 93 Ala. 418, 9 So. 720; Noyes v. Southern P. R. Co. 3 Cal. Unrep. 293, 24 Pac. 927; Goldstein v. Chicago, M. & St. P. R. Co. 46 Wis. 404, 1 N. W. 37; Baltimore & O. R. Co. v. Depew, 40 Ohio St. 127; The Serapis, 49 Fed. 395; Stafford v. Chicago, B. & Q. R. Co. 114 Ill. 244, 2 N. E. 185; Texas & P. R. Co. v. Bradford, 66 Tex. 732, 59 Am. Rep. 639, 2 S. W. 595; Northern Ohio R. Co. v. Rigby, 69 Ohio St. 184, 68 N. E. 1046, 15 Am. Neg. Rep. 411.

There being no common-law liability, unless plaintiff has brought himself within one or more of the exceptions to that rule, the court erred as a matter of law, in denying defendant's motion for a directed verdict. 2 Labatt, Mast. & S. p. 1329; Gulf, C. & S. F. R. Co. v. Blohn, 73 Tex. 637, 4 L.R.A. 764, 11 S. W. 867; Weisser v. Southern P. R. Co. 148 Cal. 426, 83 Pac. 439, 7 Ann. Cas. 636, 19 Am. Neg. Rep. 88; Duff v. Willamette Steel Works, 45 Or. 479, 78 Pac. 363, 668, 17 Am. Neg. Rep. 120; O'Reilly v. Bowker Fertilizer Co. 174 Mass. 202, 54 N. E. 534, 6 Am. Neg. Rep. 555.

*George W. Freerks* and *Geo. E. Wallace,* for respondent.

It is the duty of the master to employ only reasonably competent and careful servants. Perpich v. Leetonia Min. Co. 118 Minn. 508, 137 N. W. 12.

A master is liable for injuries to servants that spring from such negligent acts of fellow servants as are due to their incompetency. Hilts v. Chicago & G. T. R. Co. 55 Mich. 437, 21 N. W. 878; Lee v. Michigan C. R. Co. 87 Mich. 574, 49 N. W. 909; Nofsinger v. Goldman, 122 Cal. 609, 55 Pac. 425; Matthews v. Bull, 5 Cal. Unrep. 592, 47 Pac. 773; McElligott v. Randolph, 61 Conn. 157, 29 Am. St. Rep. 181, 22 Atl. 1094.

A servant is entitled to assume that the master has exercised due care and diligence in the selection and retention of reasonably competent and careful fellow servants. Giordano v. Brandywine Granite Co. 3 Penn. (Del.) 423, 52 Atl. 332; Chicago & A. R. Co. v. Sullivan, 63 Ill. 293; Illinois C. R. Co. v. Jewell, 46 Ill. 99, 92 Am. Dec. 240; Hall v. Bedford Quarries Co. 156 Ind. 460, 60 N. E. 149; Nordyke & M. Co. v. Van Sant, 99 Ind. 188; Ohio & M. R. Co. v. Collarn, 73 Ind. 261, 38 Am. Rep. 134; Scott v. Iowa Teleph. Co. 126 Iowa, 524, 102 N. W. 432; Cayzer v. Taylor, 10 Gray, 274, 69 Am. Dec. 317, 15 Am. Neg. Cas. 500; Brown v. Maxwell, 6 Hill, 592, 41 Am. Dec. 771; Gilman v. Eastern R. Co. 10 Allen, 238, 87 Am. Dec. 635; Blumenthal v. Union Electric Co. 129 Iowa, 322, 105 N. W. 588, 19 Am. Neg. Rep. 235; Carlson v. Wilkeson Coal & Coke Co. 19 Wash. 473, 53 Pac. 725; Curran v. A. H. Stange Co. 98 Wis. 598, 74 N. W. 377; Northern P. R. Co. v. Mares, 123 U. S. 710, 31 L. ed. 296, 8 Sup. Ct. Rep. 321; 25 Cyc. 1080.

The servant *never* assumes the risk of the *master's negligence.*

Narramore v. Cleveland, C. C. & St. L. R. Co. 48 L.R.A. 68, 37 C. C. A. 499, 96 Fed. 298; Cameron v. Great Northern R. Co. 8 N. D. 124, 77 N. W. 1016, 5 Am. Neg. Rep. 454; Northern P. R. Co. v. Mares, 123 U. S. 710, 31 L. ed. 296, 8 Sup. Ct. Rep. 321; Giordano v. Brandywine Granite Co. 3 Penn. (Del.) 423, 52 Atl. 332; Metropolitan West Side Elev. R. Co. v. Fortin, 203 Ill. 454, 67 N. E. 977, 14 Am. Neg. Rep. 283.

It is also the duty of the master to warn and instruct his servant concerning the dangers incident to his employment. This duty is most imperative where the danger is of a latent or obscure character, and where the master knows the servant to be inexperienced, or of immature age, as in this case. Wilder v. Great Western Cereal Co. 130 Iowa, 263, 104 N. W. 434; 20 Am. & Eng. Enc. Law, 2d ed. 97; Kerker v. Bettendorf Metal Wheel Co. 140 Iowa, 209, 118 N. W. 306; Johnson v. Desmond Chemical Co. 156 Mich. 669, 121 N. W. 269; Hamm v. Bettendorf Axle Co. 147 Iowa, 681, 125 N. W. 186; Bell v. Northern P. R. Co. 112 Minn. 488, 128 N. W. 829; Bjbjian v. Woonsocket Rubber Co. 164 Mass. 214, 41 N. E. 265; Pullman's Palace Car Co. v. Harkins, 5 C. C. A. 326, 17 U. S. App. 22, 55 Fed. 932; George Matthews Co. v. Bouchard, Rap. Jud. Quebec 8 B. R. 550.

Goss, J. Plaintiff has recovered for personal injuries suffered through the ignition of carbyde lighting gas in the yards of the defendant company at Breckendridge, Minnesota. The plaintiff was on top of a passenger coach and engaged in recharging the gas tank. In so doing it became necessary for him to loosen the top of the tank, which top extends some inches above the roof of the coach. The tank itself extends from the top to the bottom of the coach. The refuse from the former charging had just been taken out at the bottom by the plaintiff and another employee, Frank Warnecke. It then became necessary to discharge any gas remaining in the tank, and for this purpose the plaintiff climbed upon the roof of the coach. It was about 8:30 in the evening and was getting dark. A seventeen-year old boy, Joe Bronecke, had just assisted plaintiff to bring over some carbyde and was watching plaintiff and the other employee clean out the bottom of the tank. The boy did something toward helping in this operation. His lantern, with the lanterns of the other two men, was burning while

they were at work on the ground. . There is some conflict in the testimony as to whether any lanterns other than the boy's were taken to the roof of the coach, but as this must be resolved in favor of the plaintiff we should assume that the two other employees did not take their lanterns to the roof. Plaintiff, on completion of the work on the ground, mounted a ladder to the top of the coach, and knelt or sat down while releasing the cover of the carbyde tank. He says he did not see the boy mounting the ladder or on top of the coach, but the fact was the boy followed plaintiff to the top of the coach, carrying his lighted lantern, and immediately behind him was the employee, Frank. Very soon afterwards the gas released from the tank ignited and exploded, and injured all three men, the boy least of all. The plaintiff has recovered upon the theory that the boy was an incompetent and inexperienced employee of the defendant company, and was not cautioned against or informed of the dangers incident to the line of duty then being performed, that is, doing what was necessary in order to clean and recharge the carbyde tank. Defendant denies the employment, and asserts contributory negligence by plaintiff. A verdict for $575 damages was recovered, and upon the judgment rendered thereon defendant appeals.

Defendant contends that "cleaning the gas tank was no part of the boy's work, and he had no duties near the top of the gas tank and was there as a mere volunteer." And the court instructed the jury that "if you believe from the evidence that the boy was not employed by the railroad company to do the work that Wallin and Warnecke were doing, the repairing of cars and recharging of gas tanks, and was not ordered by his foreman to assist them at this work, but was hired to do other work, and that he voluntarily assisted these men at the time of the accident at his own curiosity or at their request, then I charge you that the defendant company is not liable in this action." This instruction is not challenged and becomes the law of the case. Determination of the merit of the assignment as to the boy being a mere volunteer in doing what he did becomes a question of fact. The record will now be quoted to present the proof as to whether there is evidence that the boy was at that time engaged as an employee of the defendant company in the performance of the duties of his employment. The testimony will be set out by question and answer so far as it bears upon this matter

of fact. Plaintiff testified that he, Joe, Frank, and Martin Bronecke, the boy's father, were present, and to the preliminary facts heretofore recited, and also that the boy had come to the top of the coach before the explosion, which occurred immediately afterwards.

He testified as follows:

Q. What work or business did the boy have up there on top of the car?

A. He had orders to help us fill them.

By the Court: How do you know he had orders to help you?

A. They was the only two there, and Carl Stander gave the orders to fill the coaches.

Q. How do you know Carl Stander ordered him to help you?

A. He told me he had two down there filling the coaches.

Q. He told you he had two men down there?

A. They was going to fill, and he told me to go down and help them.

Q. And was Martin Bronecke there before that?

A. Yes.

Q. And Frank?

A. Frank was not there; he came later. Frank had orders by the foreman; he was home and he got orders to work extra over there and help fill up these coaches.

Q. You say you know he (Joe) had orders to fill and to help because somebody told you; you didn't hear these orders.

A. No, I didn't hear.

Q. He (Joe) didn't report to you?

A. No.

Q. He was not working for you or anything?

A. No.

Q. Was he doing anything particular to help, or was he just standing around?

A. Well, he was trying to do what he could.

Q. Did he do anything?

A. No, not much.

Q. By the Court: What did he do, if anything, if you can remember?

A. He helped to try to pound up the bottom cover with the bar; it

was awful tight, and we have to take a bar and push it open. [This refers to what was done on the ground, and by the term "he" the boy Joe is meant. Plaintiff, testifying as to his going up the ladder, says: "I just started and he was on the ladder after me."]

By the Court: How do you know that?

A. We were staying there talking what we were going to do, and he think he would like to help, and I take my hammer and went up. [Witness has reference to talking with Joe while they were on the ground just before going on top of the coach.]

He was then asked:

Q. Who was it that was doing that work? Was it you or Joe or this man Warnecke?

To which he answered: We was supposed to help.

Joe the boy was called in plaintiff's behalf and testified to his age, that he had been in the employ of the defendant company for twenty-two nights, that he was hired to clean the coaches inside and out on trains 197 and 198, that is the train running from Breckendridge to Larimore and back, and that that was the only work he was hired to do. He then testified:

Q. Was there anything in your duties that you were hired to perform that had anything to do with the acetyline gas tanks?

A. Not exactly.

Q. Were you ever instructed, directed, or hired to clean or take part in cleaning gas tanks?

A. No.

Q. Was it any part of your duties in the employ of the company in which you were engaged at that time to participate or help in the cleaning of gas tanks?

A. No.

Q. Your work consisted entirely of cleaning coaches itself?

A. Cleaning coaches, yes.

Q. This is the work you were doing nights.

A. Yes.

Q. Were there any particular coaches that it was your duty to clean?

A. Yes.

Q. What were they?

A. Three coaches running on 197, again when they came back on 198; left at 5:25 in the morning and came back at 9:30 in the evening. [It appears that this train had not yet arrived, and was not in the·yard at the time of·the accident in question, but arrived around an hour later.] Witness was asked why he went over there, to which he answered: "I went over to help them out is all."

Q. Anyone send for you?
A. No.
Q. You went on your regular duties?
A. Yes.

On cross-examination he was immediately asked:
Q. Did you go over there on your regular duties to help clean out the gas tank?
A. Oh, no, no, that was not my duties.
Q. You were there in the yards waiting for your train?
A. Yes.
Q. To attend to your duties when the train came in?
. A. Yes.
Q. There was nothing in the line of your duties that required or authorized you to be around this particular gas tank?
A. No.

Upon this testimony as to employment plaintiff's case was rested, and the usual motion to direct a verdict of dismissal was overruled. Afterwards in defendant's case Joe was recalled and testified substantially as before, stating that he had been over at this particular car since 7 o'clock, or about an hour and a half, and had helped carry a 2-bushel basket of carbyde to the car, at which time but he and plaintiff were there; that subsequently his father and Frank came; and that he was not assigned or directed to do·this work by anyone, but did it in addition to his duties, which were to be over there in time to get his ice, oil, and waste ready for the coaches when train No. 198 arrived, for cleaning them. Concerning what was done on the ground toward cleaning this carbyde tank, witness says:

"Well Pete [plaintiff] started to drive it off and it got tighter, and then Frank come along and said we was putting it on, and he tapped it on the other side and it loosened up, and father took a bar and

knocked on it, and Frank took a stick and loosened up all the waste carbyde, and in the meantime after he had this poked out then Pete went up on the car. I was watching Frank a few seconds, and then Frank picked up his lantern to go up, and I followed him up the ladder and went up on the car.

Q. What were you doing there?

A. I was watching to see how it was done.

Q. Who told you to?

A. Nobody.

Q. Were you helping in any way?

A. I was in one way.

Q. Anybody suggest you going up there?

A. No, sir, nobody did.

He then describes the explosion, which he says was caused by one of the other lanterns. The car foreman, Ames, then testified that all of these employees, including Joe, were working under his supervision, and that he had hired Joe to work as a coach cleaner only; that at no time had he directly or indirectly ordered Joe to do the work of repairing or cleaning carbyde gas tanks, that it was not Joe's work; that he had told Frank to return after supper and take care of "the particular car and gas tank and the filling of it" and to clean the carbyde gas tank; that "he had done it before, but I instructed him to be careful of the light and his pipe, because he had not been in the habit of filling tanks late in the evening at night." Carl Stander, concerning whom plaintiff has given some hearsay testimony, was called and testified that he was a car inspector in the yards, and that he sent Wallin down "to fill the tank with carbyde. I told him to go down and fill this tank, and asked him if he had ever filled one before. I says, 'Do you know how to fill them?' and he says, 'I have filled them before;' and I says, 'Look out for the light;' and he went away, went down; that was the last I seen of him until after the accident." On this testimony this question was presented to the jury. Under the court's instructions it must have found that if this work was within the scope of Joe Bronecke, either he was actually employed to do work of which that was a part, which is contrary to all the testimony, or that he was assigned by Stander to assist in doing this work. Concerning this plaintiff

heard no such orders given, and the only evidence in the entire record supporting this consists of the conclusions of the plaintiff that "he (Stander) told me he had two down there filling the coaches," given in response to the question, "How do you know Stander ordered him to help you?" and "they was going to fill and they told me to go down and help them." It is undisputed that both the plaintiff and Frank were assigned to this particular work on this night, one by Stander and the other by Ames, and further that Joe was not employed to do this work, but had his regular duties elsewhere at about this time. In fact, immediately after the explosion he entered upon them by getting oil, ice, and waste ready for the incoming train from Larimore, to which under his employment he was assigned as cleaner. He had worked in the yards only twenty-two days, and necessarily was an inexperienced employee, a mere boy; besides it is undisputed that the two men assigned to this work were both railroad men of considerable experience, and were both cautioned against having lights around while doing this work. Not only are all the probabilities against such an employment of the boy, as plaintiff must establish to be the fact, but at no place in the record is there any evidence that the boy was there other than as a volunteer or out of mere curiosity to see, as he says, "how it was done," and while he was waiting for the time to arrive to begin his regular duties. Plaintiff's conclusion that Stander ordered Joe to fill the coaches, based entirely on the fact that Stander had told him that "he had two down there filling the coaches" and to go down and help them, amounts to nothing more than a mere inference at the most that Joe was one of the men doing that work, while it is equally probable that Joe's father, Martin, and Frank Warnecke, or some employee other than Joe, was meant. Besides plaintiff has offered the testimony of the boy as a part of his main case, and thereby vouched for his credibility, and such witness has repeatedly and positively denied that anybody sent him there, or that what he was doing there was a part of his regular duties; and later on, in response to the question, "What were you doing there?" says, "I was watching to see how it was done,"— a most natural thing for a boy to do who was just starting at the business of railroading, and who found himself with time on his hands and near some railroad men who were working at something he probably had not seen done before. The judgment appealed from is ordered

reversed and the verdict upon which it is based set aside. There seems to be no reasonable likelihood that plaintiff can establish that Joe Bronecke was acting within the scope of any employment at the time of the accident. In fact the testimony conclusively negatives such a probability. The action is therefore ordered dismissed under author- ity of § 7643, Comp. Laws 1913, construed in Richmire v. Andrews & G. Elevator Co. 11 N. D. 453, 92 N. W. 819, and subsequent holdings of this court. It is so ordered.